## Phillips's Appeal.

34   489
199   180

34      489
19 SC  593

A judgment rendered by a justice of the peace, on an award of referees, for a sum exceeding $100, is void for want of jurisdiction; and an executor is not justified in paying such judgment, unless the claim upon which it was founded, be shown to be a just and legal one. ·

APPEAL from the Orphans' Court of *Allegheny county.*

This was an appeal by J. Harvey Phillips from the decree of the court below upon the accounts of Amos Holland, administrator of Catharine McCreary, deceased.

Before the auditor, appointed to audit the account of the admi-nistrator of Catharine McCreary, deceased, the accountant claimed a credit for $769.01¾, paid to the appellant; which was disallowed by the auditor, and his report having been confirmed by the court, this appeal was taken by the creditor.

The facts of the case are fully stated in the following opinion delivered in the court below :—

" In this case, the auditor has made a very full and careful report, and has returned the whole bearing of the evidence,

[Phillips's Appeal.]

which is quite voluminous. To this report, the counsel for the executor and J. H. Phillips, a creditor of the estate, filed eight exceptions, which were heard before the auditor, and overruled by him, and were re-filed for hearing in this court. Two exceptions to the auditor's report were filed by the counsel for the heirs, and arise under the will of Catharine McCreary deceased, which were likewise heard before the auditor, and overruled by him.

"It appears from the auditor's report, and the evidence returned, that Nancy McCreary and Catharine McCreary were maiden sisters residing, before and at the time of their decease, in Allegheny county; that they were the joint owners of a farm, on which they resided up to the time of their decease; that J. Harvey Phillips, for a period of more than twenty years, had lived with these maiden sisters, upon this their farm, and attended to all the farming business.

"On the 1st of June 1850, Nancy McCreary made her will, by which she devised all her property to her sister Catharine; appointing Amos Holland her executor; and on or about the 4th of March 1856, she died.

"On the 10th of March 1856, Catharine McCreary, the surviving sister, made her will, in which she says: 'As touching my estate in this world, that it hath pleased God to bless me with,' &c.; she then made sundry bequests to her relations by name; she likewise bequeaths a bed, bedding, and bureau, to Mary Jane Phillips, and a bequest of $50 to J. H. Phillips; she also appointed Amos Holland the executor of her will. Catharine died in April 1856. The estate of these two sisters, Nancy and Catharine McCreary, in their lifetime, consisted of the farm before mentioned, some household furniture, and a small sum at interest, somewhat less than $1000.

"On the 1st of June 1850, Nancy McCreary and Catharine McCreary executed, or rather signed a deed, to J. H. Phillips, his heirs and assigns, for their farm. The consideration mentioned in the deed, is $2500, purporting to be a money consideration; and at the foot of the deed, a receipt is drawn for that sum, which is signed by Nancy and Catharine, of the same date; *and both the deed and receipt for purchase-money, are witnessed by Amos Holland.* The deed was left in the possession of said Holland, during the lifetime of Nancy, and was in his possession after the decease of Catharine, but was placed on record about the 4th of April 1856, either by Holland or Phillips.

"It is admitted by the counsel on both sides, that this deed from Nancy and Catharine, to Phillips, was not given on a money consideration, but that it was in consideration, and in fulfilment in all, or in part, of a contract for the labour and services of J. H. Phillips. With this fact admitted by the counsel, the question arises, what were the terms of that contract? If this question

[Phillips's Appeal.]

can be satisfactorily answered from the evidence, the case will be free from difficulty.

"Samuel Morton and Amos Holland are the only witnesses to the deed. It is likewise admitted by the counsel, that no part of the contract between the parties was in writing, except the deed. Was that contract executed, or was it executory? Let us look to the evidence for the answer. The two subscribing witnesses to the deed, were the only persons present, when the contract was made, besides the parties; the grantors are both dead; the subscribing witness, Holland, is the executor, and party to this proceeding; and Phillips, as a creditor of the estate, is interested to sustain the account of the executor, from whom he has received the money, for which the executor claims the credit, which raises the whole question in this case.

"We must, therefore, look first to the testimony of the other subscribing witness to the deed (Samuel Morton). We learn from him, that the contract was executory during the lives of the grantors. He says, that he was present at the execution of the deed, and the will of Nancy; that both were executed at the same time; that no persons were present but the parties before named; he says, Holland was the person doing the business; I was only brought in; all I know, was that Holland sprung the conversation; he appeared to be doing the conversation very carefully; he wanted a surety from *Phillips, of his performance hereafter;* no money was paid at the time of the deed. Holland wanted a guarantee from Phillips, to do his part of the proposed different things, that Phillips was to give; Holland proposed that Phillips should give his note, and Phillips objected giving his note, as they might come against him, some time hereafter; Nancy remarked that she had all confidence in Phillips, that he would do all that was right by her; Holland explained what Phillips was to do for them in *lieu* of this property; that Phillips was to do, I understood, to do as he had been doing. Whether Holland proposed to keep the deed, or Nancy keeping the deed, Holland took the deed away with him; nothing more was done. In answer to a question, 'it was not agreed that any bonds, mortgage, or notes, should be given for that deed.' In another part of his testimony, he says, Phillips has told me, at different times, that if he did not get the land, he held himself ready to lay in a bill; that he had a book-account for the last twenty-one years, to meet this case, if he did not get the land.

"The evidence shows that after the death of Nancy, the deed was found in the possession of Phillips, he alleging that he received it from him, but Holland took the deed from him in the register's office and kept it, and sent a message to Phillips by Morton, explaining why he took the deed. Morton says: 'I told Phillips the message, and that the reason why he (Holland)

had retaken the deed, was to make Phillips live up to his contract; he said that he hoped Kitty would not think so hard of him, as that he would not live up to his contract.

"Phillips said to the witnesses at different times, if he did not get the land, he would lay in a bill; said he had spent his time there, had done a good deal, and that he was to get the land. In another part of his testimony, he says: 'Phillips told me that he was to get the land, for taking care of those girls, in connection with what he had done.'

"The court think it very clear from all the evidence, that the contract between the parties was, that the land was to be and was deeded to Phillips in consideration of his services and care of the grantors up to the date of the deed, and of his continuing to take care of them as he had done, for and during the term of their natural lives; that the contract was conditional and executory. The deed was signed by the grantor and delivered to Holland as an *escrow;* to be delivered to Phillips, after their decease. This contract became fully executed after the decease of Catharine, the survivor, by the delivery of the deed to Phillips, and which was afterwards recorded on the 17th of June 1856.

"Having arrived at this conclusion, in relation to the contract between Phillips, and Nancy and Catharine McCreary, the remaining questions in the case are free from difficulty. It appears from the evidence, that after the death of Catharine, the survivor, and after the deed had been fully delivered by Holland and recorded, an ejectment was brought against Phillips, for this land, by some of the heirs of the grantors, and which is still pending in the District Court in this city. With the real estate, or the permanency of the ejectment to recover the same, this court has nothing to do; it only became material to discuss the question of the contract in reference to the real estate, to show its bearing upon the claim of Phillips, against the estate for services rendered, both prior and subsequently to the death of Catharine McCreary. After her decease, Phillips made a claim against the estate of $700, for work and labour done. The larger part of this claim was for work and labour done during the lifetime of decedents. The balance for labour, washing, cleaning, &c., after the decease of Catharine.

"To recover this claim, two amicable actions were entered before James Espy, Esq., a justice of the peace, on the 24th of January 1857, in which James H. Phillips is plaintiff, and Amos Holland, Esq., executor of the estate of Nancy McCreary and Catharine McCreary, deceased, is defendant. The claim in one case is for the sum of $769.01¾, and in the other for the sum of $60.50. We know nothing of the agreement for the actions in these cases, except the entries made by the justice on his docket. No agreement for the purpose was signed by the parties. The

justice made the entry in each case, 'Defendant objects to plaintiff's account.' The transcript states, that the cases, by agreement of the parties, were referred to three men chosen by the parties as referees, being the same referees in each case. The transcript further shows, that the referees, after hearing the parties, &c., awarded in favour of the plaintiff, in one case the sum of $624.58, with costs of suits, &c.; in the other, the sum of $21.79, and costs of suit. In each of these cases, the justice entered judgment. The transcript states that the plaintiff was not present when judgment was entered for $624.58; but that the defendant was present, ' and objects to entering judgment on the award.' The defendant appealed from these judgments, which were regularly entered in the Common Pleas, but were afterwards withdrawn by defendant; and the amount for which judgment had been entered by the justice, was paid by the defendant, as executor, to Phillips, the plaintiff; and for this the executor claims credit in his account.

" The auditor allowed credit for the smaller judgment, $21.97; and disallowed the credit claimed for the larger one, to wit, $624.58; to which allowance and disallowance, exceptions have been filed by the respective parties.

" The counsel for the executor and Phillips have filed eight exceptions, which may properly, in principle, be reduced to two— namely, that the judgment for $624.58 was a legal and valid judgment; and if not, that the sum for which the judgment was given was a *bonâ fide* debt due Phillips, and that it was the duty of the executor to pay it. The court is of opinion that it was not a legal or valid judgment, that the justice exceeded his jurisdiction in taking cognisance of the claim and entering judgment for the same.

" The compulsory jurisdiction of a justice of the peace, in cases of contract either express or implied, is limited to sums not exceeding $100. The 14th section of the Justice Act, *Purd. Digest* 689, provides, that any justice of the peace shall take cognisance of any matter or thing made so by this act, for any sum exceeding $100, if the parties voluntarily appear before him for that purpose, and shall proceed for the recovery thereof by entering judgment, if confessed or if submitted to him by reference. It is essential to the validity of a judgment of a justice of the peace, for a sum exceeding $100, that it should appear upon the face of his record that the *parties* appeared before him, and confessed the judgment. Without this the judgment is absolutely void: 10 *Watts* 118; 4 *S. & R.* 190.

" The 14th section of the Act of 1810 does not authorize a reference to arbitrators in a suit before a justice, where the sum is over $100. The meaning of the words, *submitted to him by reference,* is, that the parties leave it to the justice himself to ascer-

[Phillips's Appeal.]

tain the amount due : 1 *S. & R.* 27. An award for more than $100, by referees, appointed in an amicable action before a justice of the peace, is not a good award under the Act of Assembly, or at common law : 2 *S. & R.* 489. This judgment, therefore, was invalid, and void. The question, therefore, recurs, was the claim, on which the judgment was founded, a *bonâ fide* debt due from the estate to Phillips, the plaintiff?

"The court think it is manifest from the residue of the evidence here given, that the claim of the plaintiff, Phillips, set up as the foundation of this judgment, had been fully satisfied and discharged, in the contract which formed, in part, at least, the consideration for which the deed was given and executed, from Nancy and Catharine McCreary to said James H. Phillips. We think the auditor was right, in overruling the exceptions filed by the counsel and executor and Phillips, and the same one overruled by the court.

"The remaining questions arise upon the exceptions, filed by the counsel for the heirs and assigns, under the will; and 1st: That the auditor erred in allowing credit for the sum of $21.79, the amount of the small judgment. That judgment was regularly obtained. The consideration was for labour and services rendered after the decease of Catharine, and the court think was properly allowed; the auditor was right in overruling that exception, and the same is overruled by the Court.

"The 2d exception filed by the same counsel, to wit, that the auditor erred in not charging the costs of the audit on the executor. The court, somewhat reluctantly, affirm the ruling of the auditor, as the executor, Holland, must be presumed to have known all about the business of these parties. He was the agent of Nancy and Catharine when the contract was made with Phillips, when the deed was drawn and signed. It was delivered to him in *escrow*. He witnessed the deed and receipt of the consideration, at the foot of the same. He was the executor in both the wills. He disputed the claim of Phillips, in the judgment, appealed from the same, and then, without any satisfactory reason, withdrew the appeals, and paid the amount for which the judgment was given. The auditor charitably thinks that the executor may have acted in good faith, although in error in paying the alleged claim of Phillips, as plaintiff, in the large judgment, and, therefore, overruled the exception; and the court is not inclined to disturb the mantle of charity so kindly furnished by the auditor. This exception is likewise overruled by the court, and the report of the auditor is confirmed."

*R. & S. Woods*, for the appellant.—The submission and award were good as a submission and award by parol : Lobb *v.* Lobb, 2 *Casey* 327 ; Babb *v.* Stremberg, 3 *Harris* 399.

[Phillips's Appeal.]

*J. H. Hopkins* and *Kirkpatrick,* for the appellees.—The justice had no jurisdiction; the reference was irregular and illegal, and the judgment void: Brenneman *v.* Greenawalt, 1 *S. & R.* 31; McKellip *v.* McKellip, 2 *Id.* 489; Camp *v.* Wood, 10 *Watts* 118.

The opinion of the court was delivered by

READ, J.—It is clear, that the judgment entered on the award of referees, by the justice, for $624.58, with costs of suit, in favour of J. Harvey Phillips against Amos Holland, as executor of the decedent, was null and void. The power of a justice of the peace, in all controversies for any sum exceeding $100, is limited to two cases. If the parties voluntarily appear before him for that purpose, he shall take cognisance of the same, and shall proceed for the recovery thereof by entering judgment, if confessed, or if submitted to him by reference. Now, the judgment in the present instance was not entered by confession, nor upon submission to the justice by reference. The parties must agree on the sum for which judgment is to be entered, or leave it to the justice to ascertain from mutual accounts admitted to be fair and just. Neither of these courses was adopted, for the defendant objected to the plaintiff's account; and, after the award by the referees, the defendant objected to entering judgment on the award.

This being the case, the executor was not justified in paying the amount of this illegal and invalid judgment, unless the claim upon which it was founded was a just and legal one. The auditor and the Orphans' Court both were of opinion that it was not, and we see no reason to disturb their judgment upon this point. The court below say they "think it is manifest that the claim of the plaintiff, Phillips, set up as the foundation of this judgment, had been fully satisfied and discharged on the contract; which formed, in part at least, the consideration for which the deed was given and executed from Nancy and Catharine McCreary to said James H. Phillips."

Decree affirmed at the costs of the appellant.